UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-246-H

RONALD B. BURGE                                                    PLAINTIFF

V.

PPG INDUSTRIES, INC. AND                                      DEFENDANTS
PPG ARCHITECTURAL FINISHES, INC.
aka/dba Porter Paints

**MEMORANDUM OPINION**

Plaintiff, Ron Burge, filed suit against his former employers PPG Industries, Inc. and

PPG Architectural Finishes (collectively "PPG"), alleging age and disability discrimination

under the Americans with Disabilities Act ("ADA") and Kentucky Civil Rights Act, Ky. Rev.

Stat. § 344.010 *et seq*. ("KCRA"), disability discrimination under the Kentucky Equal

Opportunities Act, Ky. Rev. Stat. § 207.130 *et seq.* ("KEOA"), and intentional infliction of

emotional distress.

Plaintiff's claims are confusing because he received long term disability for several years

under PPG's employee benefit plan.  However, the definition for disability under the ADA is

quite different than that under a typical company plan.  All discovery is now complete and PPG

has moved for summary judgment on all the claims.  The Court concludes that PPG followed its

procedures correctly and that no evidence suggests a bias based either upon an ADA disability or

Plaintiff's age.

I.

In 1999, PPG purchased Porter Paints, for whom Burge had worked since 1984. From

1994 until 2002, Plaintiff worked as a High Performance Coating ("HPC") sales representative.

In 2002, Defendants moved Plaintiff into a dealer sales representative position. As a dealer sales representative, Plaintiff sold paint and paint supplies.  He suffers from a hypersensitivity to aromatic hydrocarbons, which causes him to have an allergic reaction when exposed to paint fumes.

Pat Ernstberger, Plaintiff's supervisor, described Plaintiff's performance after moving from HPC sales representative to dealer sales representative as dismal. On April 10, 2003, a little over three months after moving to the dealer sales representative, Plaintiff received notice in a meeting with Ernstberger that if Plaintiff did not improve his performance within 30 days he would be fired. At this point Plaintiff had two options, improve his performance or face termination. Betty Lindsey, in her capacity as Human Resources Director attended the meeting as well. At the meeting, Lindsey provided Plaintiff with a third option, disability leave.

PPG provided for Short Term Disability ("STD") leave for up to a year. Such leave included salary continuance benefits. After that, an employee could apply for Long Term Disability ("LTD") leave. This LTD leave is bifurcated into an initial two-year period, and then an extended period after that initial two years. The standards for eligibility for the two periods of LTD leave are different, which in turn are different from the standard for eligibility for STD leave. Furthermore, PPG decides qualifies for STD leave, while PPG's insurance provider, the Hartford, determines who qualifies for LTD leave. PPG employees, such as Plaintiff, follows a specific track in terms of receiving disability leave.

First, the employee will apply for STD leave. PPG then determines whether the employee qualifies for such leave. Second, after a year of STD leave has elapsed, the employee applies to the Hartford for LTD leave to cover the next two years. This first stage of LTD leave requires

that the employee is continuously unable to perform the substantial and material duties of the employee's regular occupation. After the first two-years of LTD leave, the employee applies for further LTD leave. This final form of disability leave requires that the employee is unable to engage in any occupation for which the employee is or becomes qualified.

Plaintiff applied for STD leave approximately two weeks after the meeting on April 10. Defendants placed Plaintiff on STD leave for one year. After a year of STD leave, Plaintiff contacted his former boss, Ernstberger, to request a return to work ("RTW"). Ernstberger, in violation of Defendants RTW policy, did nothing with this request. Then Plaintiff applied for the two-year LTD leave. After a dispute between Plaintiff and Defendants' insurance carrier, Hartford placed Plaintiff on the two-year LTD leave. Before the end of the initial two-year LTD leave period, Plaintiff was told that he would not qualify for the extended LTD leave. Plaintiff then requested another RTW from Defendants. Defendants, through their Human Resources Director Russ Moses, could not find a job that met Plaintiff's restrictions, qualifications, and which Moses believed Plaintiff was interested. Unable to find a position for Plaintiff when his LTD leave expired, PPG terminated his employment.  Plaintiff's complaint arose from this last action.

## II.

Summary judgment is appropriate where there exists no genuine issues of material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 2112(a).[1]  Plaintiff claims Defendants discriminated against him because he suffers from a sensitivity to aromatic hydrocarbons.

One way of avoiding summary judgment is to show direct evidence of disability discrimination in this case.  By definition, direct evidence does not require an inference.  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).  Although Plaintiff contends that the record is rife with direct evidence, he points to none.  True, Defendants did place Plaintiff on STD leave, which necessitated a judgment that Plaintiff was disabled as Defendants define the term. This is not direct evidence of discrimination.  To be so would require the inference that Defendants' definition of disability for purposes of determining if an employee qualifies for STD leave is the same as the ADA's definition of disability.  Indeed, the definitions of the two, though overlapping to some degree, are quite different.  Thus the mere fact that Plaintiff was placed on STD leave does not constitute direct evidence of discrimination.

Without direct evidence of discrimination, Plaintiff must establish a prima facie case. To do so, he must show: (1) he is "disabled;" (2) he is otherwise qualified for the position with

---

[1]Although Burge asserts his cause of action under the KCRA, the KCRA is interpreted consonant with the Americans with Disabilities Act. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).

The Court need not analyze the state common law claims either.  The Kentucky Supreme Court states, that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Gryzb v. Evans*, 400 S.W.2d 399, 401 (Ky. 1985). Here, the KCRA subsumes Plaintiff's claim for Intentional Infliction of Emotional Distress, because the acts that give rise to the two claims are the same and the KCRA specifies the recovery available. *See Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 240 (Ky. App. 2001).

or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open or a non-disabled person replaced him. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).

A disability means (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *Moorer v. Baptist Memorial health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005).  Plaintiff may only recover if his impairment fits one of the three definitions of disability provided for in the ADA.  Plaintiff contends that his hypersensitivity to aromatic hydrocarbons, a physical impairment, substantially limits his major life activities of working and breathing.  To be sure, both working and breathing do qualify as major life activities under the ADA. *See Moorer*, 398 F.3d at 470.  Stating those two obvious points, however, is a long way from showing their application here.  Plaintiff falls well short.

First, Plaintiff's physical impairment does not substantially limit Plaintiff's ability to work, because it does not significantly restrict him from performing a class of jobs or a broad range of jobs. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 370 (6th Cir. 1997). Here, Plaintiff could still successfully perform a class of jobs, such as sales. Merely being restricted from performing a narrow range of jobs within a larger class, such as sales jobs involving aromatic hydrocarbons, does not constitute a substantial limitation. *See Id.* at 373.  No case law supports the finding of a disability in these circumstances.

Second, Plaintiff does not qualify as disabled under a "record of" claim.  Such a claim requires evidence of a record of the fact Plaintiff had a physical impairment that substantially

limits one or more major life activities, or evidence that Defendants misclassified him as having

such an impairment. 29 C.F.R. § 1630.2(k). Plaintiff presents evidence of neither. While

Defendants had a record of Plaintiff's impairment sufficient to satisfy their own disability policy,

there is no evidence to suggest Defendants had a record that showed Plaintiff was substantially

limited in one or more major life activity.  Plaintiff seems to conflate disability in terms of

recovery under the ADA and disability in terms of Defendants' STD and LTD leave policies.

The two are quite different.  To allow plaintiffs to recover under the ADA merely because their

employer had a record sufficient to establish the employee was "disabled" for purposes of the

employer's disability policy would eviscerate the more stringent standard of the ADA.

Furthermore, Defendants did not misclassify Plaintiff as disabled by informing him he could

apply for STD leave. Such an offer, again, was made in reliance on Defendants' definition of

disability.

　　　Third, Plaintiff does not meet the ADA's definition of disabled, because Defendants did

not regard him as disabled. For a "regarded as" claim, Plaintiff must show that Defendants

regarded him as unable to work in a broad class of jobs. *See Sutton v. United Air Lines, Inc.*, 527

U.S. 471, 493 (1999). Here, however, Defendants believed Plaintiff was capable of working in a

broad class of jobs. Plaintiff was rejected from the second phase of LTD leave precisely because

Defendants' believed he could work in a broad range of other positions.

　　　Similarly, Plaintiff also does not qualify as disabled because his impairment does not

substantially limit his ability to breathe. To constitute a substantial limitation, the impairment

must "limit an individual, not in a trivial or even moderate manner, but in a major way, to a

considerable amount, or to a large degree." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d

620, 627 n. 12 (6th Cir. 2000). In this case, Plaintiff's breathing was only limited when exposed to certain aromatic hydrocarbons. Plaintiff has testified that he was able to bathe and dress himself, drive an automobile, perform routine chores, and engage in normal relations with his wife and child. Plaintiff has not produced evidence to support a finding that his impairment substantially limits his major life activity of breathing.

Also, Plaintiff cannot make a "record of" or "regarded as" claim of disability in regards to any limitation based on his ability to breathe. As discussed above, Plaintiff's evidence for a "record of" or "regarded as" claim relies on the fact that Defendants allowed Plaintiff to take STD leave and a two-year period of LTD leave. As the Court has already said, to allow such a claim would severely weaken the ADA's standard for finding disability. Furthermore, it might have a chilling effect on employers' willingness to allow their employees to take disability leave for impairments that do not meet the ADA's definition of disabled.

For all these reasons, Plaintiff does not meet any of the three definitions of disabled as provided for by the ADA and therefore cannot recover under the ADA.

IV.

Plaintiff has not shown evidence sufficient to support a finding that he has a "substantial disability" as required by the KEOA. Ky. Rev. Stat. 207.130. In an unpublished opinion, the Sixth Circuit said that a court may not supplant the language of the KEOA with the ADA. *Reid v. Contel Cellular of Louisville*, 96 F.3d 1448, 1996 WL 506372, (6th Cir. Sep. 4, 1996). Thus the Court must interpret the statute according to Kentucky law. While few cases illuminate the language of the KEOA, both parties agree that the it applies to employees with physical

handicaps. *Whitlow v. Kentucky Mfg. Co.*, 762 S.W.2d 808,  809 (Ky.App. 1988). Here,

however, Plaintiff does not suffer from a physical handicap within the meaning of the KEOA,

and even if his condition constituted a physical handicap, there is no evidence that it constitutes a

substantial disability as required by the statute. As the Court has already said, Plaintiff could

carry on normal activities such as bathing himself, doing chores, and engaging in normal

relations with his family.

V.

In order to make out a prima facie case of age discrimination under the KCRA or ADEA,

Plaintiff must show, (1) he was a member of a protected age class; (2) he suffered an adverse

employment decision; (3) he was qualified for the positions he held; and (4) he was replaced by

a younger worker or was treated differently than a similarly-situated, non-protected employee.

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Neither party disputes that

Plaintiff is a member of a protected class.  Whether Plaintiff can show that he suffered any

adverse employment action before he went on disability leave is a more difficult question.

Moreover, he was neither replaced by a younger worker nor treated differently than a similarly-

situated, non-protected employee.

Plaintiff  alleges he suffered an adverse employment action in the form of an unnoticed

and unwanted transfer from his HPC position to a dealer position. However, a transfer from one

position to another, without the loss of pay, fringe benefits or some other significant work

benefit does not qualify as an adverse employment decision, where the transfer does not operate

as a constructive discharge. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir.

2002). Plaintiff makes no claim that his transfer to HPC was a constructive discharge. While

8

Plaintiff contends the 2003 warning was actually an ultimatum requiring Plaintiff to go on disability leave or be fired, this ignores two important facts. First, there was a third option for Plaintiff, namely improving his performance. Second, Plaintiff voluntarily applied for disability leave after two weeks of deliberation. Taken together, the facts show that such a warning did not constitute a constructive termination, nor a forced move into disability leave, but rather a reasoned decision on the part of Plaintiff to apply for disability leave.

Plaintiff alleges that after he went on disability leave he suffered two more adverse actions. He claims the disregard for his first return to work request and his ultimate termination were both adverse employment actions. Assuming both of these actions were adverse, which seems likely, Plaintiff still cannot recover under his age discrimination claim.

Plaintiff cannot recover, because he cannot show that he received different treatment than any similarly situated younger employee when it came to actions that occurred after Plaintiff went on disability leave or that he was replaced by a younger employer after he went on disability leave. Plaintiff points to *Coburn v. Rockwell*, 238 Fed.Appx. 112, 130 (6th Cir. 2007), as a case where summary judgment was denied when an employer disregarded its own policy. However, in that case the employer made comments regarding a desire to get rid of older employees.  There is no such evidence here.  Plaintiff has no evidence that a younger employee replaced him or that he was treated differently than a similarly situated employee. When Defendants terminated Plaintiff there was no spot vacated by Plaintiff, and thus no spot filled by a younger employee. Also, Plaintiff has not shown any evidence of another employee coming off of LTD leave being treated any differently.

From this analysis the Court concludes that two of Plaintiff's four alleged adverse

actions, were not in fact adverse actions.  As to the two actions that may be adverse, Plaintiff has failed to show that he was  treated differently than a similarly situated younger employee or that a younger employee replaced him.  Thus, Plaintiff cannot make out a prima facie claim for age discrimination.

The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record